# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| RAYMOND J. DEVEREUX, JR. | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 4:20-CV-490 RLW |
| | ) | |
| JULIE KEMPKER, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Raymond J. Devereux, Jr.'s pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. (ECF No. 1.) Petitioner was formerly incarcerated at the Tipton Correctional Center in the Missouri Department of Corrections, but was released from custody during the pendency of this case and placed on parole.[1] For the following reasons, the Court will deny the Petition.

### Procedural History

On September 15, 2015, a jury in the Circuit Court of St. Louis County, Missouri, found Petitioner guilty of unlawful use of a weapon (Count I), a Class D felony for which he was sentenced to a term of three years' imprisonment; armed criminal action (Count II), an unclassified felony for which he was sentenced to a concurrent term of three years' imprisonment; and first

---

[1] Petitioner was in custody at the time he filed this Petition under § 2254. At some point after June 9, 2021, (see ECF No. 12 at 3), and after Respondent filed his response to the instant habeas petition, Petitioner was released from imprisonment and subsequently discharged from parole. The Court ordered Petitioner to show cause why the instant Petition is not moot (ECF No. 18) and ordered Respondent to respond. The Court finds Petitioner has established that his underlying conviction has continuing collateral consequences, based on his assertion that he has lost the right to receive Social Security benefits as a result of the conviction. (ECF No. 19). The Respondent responded that because Petitioner filed this action while incarcerated and challenges the underlying conviction, the case is not moot. (ECF No. 21 at 1-2.) Under these circumstances, the Court finds the Petition is not moot despite Petitioner's discharge from parole. See Spencer v. Kemna, 523 U.S. 1, 7-9 (1998).

degree assault (Count III), a class B felony for which he was sentenced to a consecutive term of five years, for a total of eight years.

Petitioner appealed his conviction to the Missouri Court of Appeals and raised four claims of trial court error. The Missouri Court of Appeals affirmed on December 27, 2016, and issued its mandate on January 23, 2017. State v. Devereux, No. ED 103698, 506 S.W.3d 393 (Mo. Ct. App. 2016) (Resp. Ex. C, ECF No. 8-3).

On January 17, 2017, Petitioner filed a pro se post-conviction motion under Missouri Supreme Court Rule 29.15. (Resp. Ex. J, ECF No. 8-10 at 30-47.) Appointed counsel obtained an extension of time and filed a timely amended Rule 29.15 motion on April 27, 2017. (Id. at 58-84.) The post-conviction motion court conducted an evidentiary hearing on October 10, 2017, and January 23, 2018 (id. at 117.) The motion court denied Petitioner's amended 29.15 motion on December 11, 2018. (Id. at 135-144.) Petitioner timely appealed. (Id. at 146.) The Missouri Court of Appeals denied the appeal on February 11, 2020. See Devereux v. State, ED No. 107509, 592 S.W.3d 849 (Mo. Ct. App. 2020) (Resp. Ex. I, ECF No. 8-9 at 1-13.)

Petitioner timely filed the instant Petition for habeas relief in federal court on April 6, 2020 (ECF No. 1). Respondent filed a response in opposition with supporting exhibits on May 28, 2020 (ECF No. 8), and Petitioner filed a reply in support. (ECF No. 9).

**Grounds Raised**

The Petition asserts the following grounds: (1) an actual innocence claim under Schlup v. Delo; 513 U.S. 298 (1995);[2] (2) a due process claim that the State knowingly used the perjured

---

[2]In McQuiggin v. Perkins, 569 U.S. 383, 386-87 (2013), the Supreme Court held that actual innocence, if proved, serves as a gateway through which a habeas petitioner may pass, whether the impediment to consideration of the merits of a constitutional claim is a procedural bar, as it was in Schlup v. Delo, 513 U.S. 298 at 324, 327 (1995), or expiration of the Antiterrorism and Effective Death Penalty Act statute of limitations, as in McQuiggin. The Supreme Court has never held that a prisoner may be entitled to habeas relief based on a freestanding actual innocence claim. McQuiggin, 569 U.S. at 392 (citing Herrera v. Collins, 506 U.S. 390, 404-05 (1993)).

testimony of a witness; (3) Petitioner's Confrontation Clause rights were violated when the victim

did not testify; (4) Petitioner was denied compulsory process for obtaining the victim's testimony

and relevant records; and (5) the trial court lacked jurisdiction due to defects in the indictment.

## Factual Background

The Missouri Court of Appeals described the facts of Petitioner's criminal case as follows:

> Defendant was charged with assault in the first degree, in violation of Section 565.050.1 The State was required to prove Defendant had the purpose of attempting to kill or cause serious physical injury to the Victim (Defendant's Mother), and took a substantial step in acting on that purpose. At trial, the state presented the following evidence.
>
> First, the State introduced a recording of the 911 call that partially illustrated the encounter. In that call, Victim's grandson told the dispatch officer that his dad, Defendant, was "trying to beat my grandma up. He just took a gun from her . . . and he's running around with it." Later in the call, the grandson is heard asking his grandmother, who was nearby, "[d]id he take the gun?" Grandmother (the Victim) replied affirmatively, but also was recorded as saying she "took the clip." The grandson reiterated that Defendant has "a gun in his hand," stating "I advise the police to shoot to kill." The grandson said he did not know "if there's two clips or if he's got bullets down there," but that Defendant "threw a knife at my grandma and took the gun from her, and I think he hit her in the face."
>
> Second, the State introduced testimony from Officer Bradley Murray, the responding officer, wherein Officer Murray recounted the Victim's experiences during the struggle. The Victim said when she went downstairs to confront Defendant, he threw a machete at her. Victim then obtained the gun from upstairs, and again confronted him. She and Defendant struggled for control of the gun. Victim was able to remove the clip during the struggle, hiding it in her palm, just before Defendant wrested the gun away. Victim then fell to the floor, and Defendant pointed the gun at her head and pulled the trigger. Thereafter, Victim fled the basement.
>
> Third, the State presented evidence that the gun used is one that is able to house a cartridge in the chamber, even if the clip was not in the gun.

(Resp. Ex. C, ECF No. 8-3 at 3-4).

## Legal Standard

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), federal courts

review state court decisions under a deferential standard. Owens v. Dormire, 198 F.3d 679, 681

(8th Cir. 1999).  Federal habeas relief is available to a state prisoner "only on the ground that he is

in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Williams-Bey v. Trickey, 894 F.2d 314, 317 (8th Cir. 1990) (citing § 2254(a)).

To obtain federal habeas review of a claim raised in a § 2254 petition, the petitioner must have first raised the federal constitutional dimensions of the claim in State court in accordance with State procedural rules. Duncan v. Henry, 513 U.S. 364 (1995) (per curiam); Beaulieu v. Minnesota, 583 F.3d 570, 573 (8th Cir. 2009) (quoted case omitted).  In Missouri, "a claim must be presented 'at each step of the judicial process' in order to avoid procedural default."  Jolly v. Gammon, 28 F.3d 51, 53 (8th Cir. 1994) (quoting Benson v. State, 611 S.W.2d 538, 541 (Mo. Ct. App. 1980)).  If the petitioner failed to properly present the claim in State court, and no adequate non-futile remedy is currently available by which he may bring the claim in that forum, the claim is deemed procedurally defaulted and cannot be reviewed by the federal habeas court "unless the [petitioner] can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  Coleman v. Thompson, 501 U.S. 722, 750 (1991); see also Martinez v. Ryan, 566 U.S. 1, 10-11 (2012).

Where the State court adjudicated a claim on the merits, federal habeas relief can be granted on the claim only if the State court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).  See Williams v. Taylor, 529 U.S. 362, 379 (2000).  The federal law must be clearly established at the time the petitioner's State conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court. Id. at 380-83.

"A state court decision is 'contrary to' clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court confronts facts that are materially indistinguishable from relevant Supreme Court precedent yet reaches the opposite result." Zornes v. Bolin, 37 F.4th 1411, 1414 (8th Cir. 2022) (quoting Williams, 529 U.S. at 405-06), cert. denied, 143 S. Ct. 411 (2022).  "A decision involves an 'unreasonable application of' federal law if the state court 'correctly identifies the governing legal standard but either unreasonably applies it to the facts of the particular case or unreasonably extends or refuses to extend the legal standard to a new context.'" Id. at 1414-15 (quoting Munt v. Grandlienard, 829 F.3d 610, 614 (8th Cir. 2016)). "To demonstrate an unreasonable application, a prisoner must show 'that a state court's adjudication was not only wrong, but also objectively unreasonable, such that "fairminded jurists" could not disagree about the proper resolution.'" Id. at 1415 (quoting Smith v. Titus, 958 F.3d 687, 691 (8th Cir. 2020)). Federal habeas courts "evaluate the reasonableness of the state court's ultimate conclusion, not necessarily the reasoning used to justify the decision." Id. (citing Dansby v. Hobbs, 766 F.3d 809, 830 (8th Cir. 2014)).

Finally, when reviewing whether a State court decision involves an "unreasonable determination of the facts" in light of the evidence presented in the State court proceedings, State court findings of basic, primary, or historical facts are presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence.  28 U.S.C. § 2254(e)(1); Rice v. Collins, 546 U.S. 333, 338-39 (2006); Collier v. Norris, 485 F.3d 415, 423 (8th Cir. 2007). Erroneous findings of fact do not automatically require the grant of habeas relief, however. Instead, the determination of these facts must be unreasonable in light of the evidence of record. Collier, 485 F.3d at 423; Weaver v. Bowersox, 241 F.3d 1024, 1030 (8th Cir. 2001).

Federal courts are "bound by the AEDPA to exercise only limited and deferential review of underlying State court decisions." Lomholt v. Iowa, 327 F.3d 748, 751 (8th Cir. 2003). "To

obtain habeas relief from a federal court, a state prisoner must show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Metrish v. Lancaster, 569 U.S. 351, 358 (2013) (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)).  This standard is "difficult to meet." Id. "The writ of habeas corpus is an 'extraordinary remedy' that guards only against 'extreme malfunctions in the state criminal justice systems.'" Shinn v. Ramirez, 142 S. Ct. 1718, 1731 (2022) (quoting Harrington, 562 U.S. at 102).

**Evidentiary Hearing**

A district court may dismiss a habeas petitioner's motion without an evidentiary hearing if "(1) the movant's allegations, accepted as true, would not entitle the movant to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." Buster v. United States, 447 F.3d 1130, 1132 (8th Cir. 2006) (internal quotation marks omitted) (quoting Sanders v. United States, 341 F.3d 720, 722 (8th Cir. 2003)). Because the Court determines that Petitioner's sole exhausted ground does not warrant habeas relief on its face and the other grounds are procedurally barred, it will deny the Petition without an evidentiary hearing.

**Discussion**

The record shows Petitioner raised one of his habeas grounds in State court, and that the Missouri Court of Appeals denied relief on review of the merits. The Court turns to the merits of the claim, exercising limited and deferential review of the underlying State court decisions as required by the AEDPA.[3]

---

[3]See Dretke v. Haley, 541 U.S. 386 (2004) (before a federal habeas court can address whether the petitioner's allegation that the actual innocence exception to the procedural default rule opens the gateway through which to present defaulted constitutional claims, it must first address all non-defaulted grounds for comparable relief and for cause to excuse default).

A.  Ground Three – Confrontation Clause Violation

In Ground Three, Petitioner states he "was denied the right to face the witness against him

at Trial, or a chance to cross-examine the witness before Trial." (ECF No. 1 at 7.)

The Missouri Court of Appeals identified and discussed the law and applied it to the facts

relevant to this claim on direct appeal as follows:

> In his second point on appeal, Defendant contends (A) the trial court abused
> its discretion in admitting Victim's out-of-court statements because those
> statements were inadmissible hearsay not subject to the excited utterance exception,
> and (B) the trial court erred in admitting the same, as the statements were
> testimonial and were not made during an ongoing emergency. Defendant thus
> contends the trial court violated his right to a fair trial and to confront the witnesses
> against him, as guaranteed by the Sixth and Fourteenth Amendments to the United
> States Constitution and Article I, sections 10 and 18(a) of the Missouri Constitution.
>
> Victim did not testify at trial. The bulk of the evidence the State presented
> came from Officer Murray, the responding officer on the day of the incident (Point
> I, supra). In addition to Officer Murray's personal experiences, the State elicited the
> Officer Murray's testimony about what Victim said to him during the incident.
> Defendant objected multiple times, both pre-trial and during the Officer's
> testimony, but his objections were overruled.
>
> Officer Murray testified that he arrived at the Victim's house two minutes
> after receiving the report from dispatch. He stated that, out of caution, he parked
> his vehicle down the street, called for more officers to support him, and approached
> the residence on foot. He then saw Victim and her grandson standing on the front
> porch, and testified—multiple times—both were visibly shaking and appeared
> "afraid" and "frightened."
> Victim voluntarily recounted the incident, stating that she confronted
> Defendant in the basement concerning her medication. Defendant reacted violently
> and aggressively toward her, and she fled after he threw a machete at her. She then
> said she retrieved her firearm from upstairs and went back down to confront
> Defendant again. The two then struggled for control of the gun. Victim managed to
> remove the clip without Defendant's knowledge, but Defendant but Defendant
> ultimately wrested the gun from her. He then knocked her to the ground, pointed
> the gun at her head and pulled the trigger. Victim fled the basement and the house,
> after which she encountered Officer Murray on her front porch.
>
> The Officer finally testified that the incident appeared to be a "very
> traumatic" event for both Victim and her grandson. Fearing for their safety, the
> Officer successfully coaxed them away from the house before he ultimately
> confronted and arrested Defendant.

### A. The Trial Court Reasonably Found Victim's Statements to be Excited Utterances

Defendant first claims the trial court abused its discretion in admitting Victim's out-of-court statements because those statements were inadmissible hearsay not subject to the excited utterance exception. We disagree.

*Standard of Review*

A trial court has broad discretion to admit or exclude evidence at trial. State v. Kemp, 212 S.W.3d 135, 145 (Mo. banc 2007). This standard of review compels the reversal of a trial court's ruling on the admission of evidence only if the court has clearly abused its discretion. Id. That discretion is abused when a ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration. Id. This court reviews the trial court for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial. Id. Trial court error is not prejudicial unless there is a reasonable probability that the trial court's error affected the outcome of the trial. Id. at 145-146.

*Analysis*

A hearsay statement is any out-of-court statement that is used to prove the truth of the matter asserted and that depends on the veracity of the statement for its value. Kemp, 212 S.W.3d at 146. The purpose of the hearsay rule is to secure trustworthiness of testimonial assertions by affording the opportunity to test the credit of the witness. State v. White, 621 S.W.2d 287, 294 (Mo. banc 1981).

As discussed above, Victim did not testify at trial, but her statements about what happened during the incident were introduced through Officer Murray. They were used to prove the truth of the matter asserted, namely that Defendant put the gun to Victim's head and pulled the trigger. These statements are hearsay, but are admissible if they fall under one of the numerous exceptions to the hearsay rule.

The State contends, and the trial court agreed, that Victim's statements were admissible under the excited utterance exception. This exception depends on a startling or unusual occurrence sufficient to overcome normal reflection such that the ensuing declaration is a spontaneous reaction to the startling event. Kemp, 212 S.W.3d at 146. When analyzing for an excited utterance, this court looks at: "(1) the time between the startling event and the declaration, (2) whether the declaration is in response to a question, (3) whether the declaration is self-serving, and (4) the declarant's physical and mental condition at the time of the declaration." Id. While no one factor necessarily results in automatic exclusion, all should be considered in determining whether the declaration was the result of reflective thought. Id.

Based on the facts of this case, we find Victim's statements to be trustworthy. The time between Victim's encounter with Defendant and the time she relayed her experience to Officer Murray was short, mere minutes. See White, 621 S.W.2d at 295 (statement made an hour after an attack admissible while victim's emotions were still under the control of the excitement of the event). Officer Murray testified that Victim offered her statements concerning the assault without

prompting. Further, Victim and the Officer spent most of their conversation on the porch detailing what weapons Defendant possessed, his potential location within the house, and other facts the Officer would need in order to safely enter the house. Finally, Officer Murray testified, multiple times, Victim was visibly shaking, and that the experience appeared to be "very traumatic" for her. See State v. Burns, 478 S.W.3d 520, 525 (Mo. App. E.D. 2015) (Victim's statement of incident "made under the immediate an uncontrolled domination of her senses" admissible under excited utterance exception to hearsay rule.).

Nothing in the record indicates the trial court's ruling is clearly against the logic of the circumstances or is so unreasonable as to indicate a lack of careful consideration.

### B.  Victim's Statements Were Made During an Ongoing Emergency

Defendant also argues that the trial court erred in admitting Victim's statements in violation of his 6th Amendment confrontation right, as he avers Victim's statements were testimonial and were not made during an ongoing emergency. We, again, disagree.

#### *Standard of Review*

This court normally reviews rulings on the admission or exclusion of evidence for abuse of discretion by the trial court. State v. Myers, 248 S.W.3d 19, 24 (Mo. App. E.D. 2008). However, when an appellant contends that his rights under the Confrontation Clause were violated by the admission of evidence, this is a question of law that we review de novo. Id.

#### *Analysis*

The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." Kemp, 212 S.W.3d at 147 (quoting U.S. Const. Amend. VI). This clause prohibits admission of testimonial statements of a witness who did not appear at trial unless the witness was unavailable to testify, and the defendant had a prior opportunity for cross-examination. Id. However, the United States Supreme Court has reiterated that nontestimonial statements are not subject to the same Constitutional protections:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

Id. at 148 (quoting Davis v. Washington, 547 U.S. 813, 822 (2006)). The circumstances of the situation must be viewed objectively. Kemp, 212 S.W.3d at 148.

Here, we find Victim's statements to be nontestimonial. They were clearly made under the circumstances objectively indicating Victim's primary purpose was to aid Officer Murray in the ongoing emergency. The bulk of Victim's statements to Officer Murray focused on what weapons Defendant may or may not have possessed, his potential location within the house, and mental state at that time. She recounted that the events had just occurred, gave statements in support, and the Officer Murray determined that she was "very traumatized" by them. These statements were not solicited by Officer Murray under interrogation, nor did he record them at the time she was speaking. Objectively speaking, Officer Murray was focused on the safety of the Victim, her grandson, and his own, not on interrogating Victim. Thus, Defendant's right to confront was not abridged.

Defendant's second point is denied

(Resp. Ex. C, ECF No. 8-3 at 6-9).

Respondent argues that the decision of the Missouri Court of Appeals denying this claim on the merits is reasonable and entitled to deference.

The Missouri Court of Appeals first concluded that the victim's statements to Officer Murray were admissible under Missouri's evidentiary rules. (Id. at 6-7.) With limited exceptions, "[t]he admissibility of evidence at a state trial is a matter of state law and ordinarily will not form the basis for federal habeas relief[.]" Clark v. Groose, 16 F.3d 960, 963 (8th Cir. 1994). As a result, "[w]hen a petitioner's federal habeas corpus claim is based upon a theory which can be determined as a matter of state law, the federal court is bound by a state court's interpretation of state law." Id. (citation omitted). A federal court may grant habeas relief, however, when the state court's evidentiary ruling "infringes upon a specific constitutional protection or is so prejudicial that it amounts to a denial of due process." Id. (internal quotation marks and citation omitted).

Here, petitioner's federal habeas corpus claim in Ground Three is based upon a theory which can be determined as a matter of state law, and the state court's evidentiary ruling does not infringe upon a specific constitutional protection and is not so prejudicial that is amounts to a

denial of due process. Consequently, this Court is bound by the Missouri Court of Appeals' interpretation of state law. Clark, 16 F.3d at 963.

The Court further concludes that the Missouri Court of Appeals did not unreasonably apply United States Supreme Court precedent when it rejected Petitioner's Confrontation Clause claim. The appellate court's finding that the absent witness's statements were nontestimonial—because they were made primarily for the purpose of aiding in an ongoing emergency—is reasonable and entitled to deference. The court accurately and reasonably applied relevant Supreme Court precedent when it concluded that under Davis, nontestimonial statements such as those of the victim in this case, while "subject to traditional limitations upon hearsay evidence, [are] not subject to the Confrontation Clause." Davis, 547 U.S. at 821.

Ground Three will be denied.

B. Unexhausted Grounds – Procedural Default

Under the doctrine of procedural default, a federal habeas court is barred from considering the merits of a claim that was not fairly presented to the state courts unless the petitioner shows cause for the default and prejudice resulting therefrom; or that he is actually innocent, such that a miscarriage of justice would result by failing to consider the claim. Murphy v. King, 652 F.3d 845, 849-50 (8th Cir. 2011). To exhaust a federal claim "the petitioner must present the same facts and legal theories to the state court that he later presents to the federal courts." Stephen v. Smith, 963 F.3d 795, 801 (8th Cir. 2020) (citations omitted).

"Out of respect for finality, comity, and the orderly administration of justice, federal courts may excuse procedural default only if the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law." Shinn, 142 S. Ct. at 1733 (citing Dretke v. Haley, 541 U.S. 386, 388 (2007), and Coleman, 501 U.S. at 750) (internal quotations omitted). To demonstrate cause, the petitioner must "show that some objective factor external to

the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). To demonstrate prejudice, the petitioner must show that the claimed constitutional violation "worked to his actual and substantial disadvantage." Id. at 494. A showing that the errors at trial created a "possibility of prejudice" is not sufficient. Id. (quoting United States v. Frady, 456 U.S. 152, 170 (1982)). "If a prisoner fails to demonstrate cause, the court need not address prejudice." Cagle v. Norris, 474 F.3d 1090, 1099 (8th Cir. 2007).

With respect to the cause of default, "attorney error is an objective external factor providing cause for excusing a procedural default only if that error amounted to a deprivation of the constitutional right to counsel." Davila v. Davis, 582 U.S. 521, 528 (2017) (citations omitted). The ineffective assistance of postconviction counsel generally does not constitute cause for procedural default because there is no Sixth Amendment right to postconviction counsel. As such, there was no deprivation of a constitutional right to counsel. Dorsey v. Vandergriff, 30 F.4th 752, 755 (8th Cir. 2022) (citing Thompson, 501 U.S. at 752). The Supreme Court created a narrow exception to this rule in Martinez v. Ryan, and held that "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." 566 U.S. at 17.

The Martinez exception was expanded in Trevino v. Thaler, which held that it applies where state law explicitly prohibits prisoners from bringing claims of ineffective assistance of trial counsel on direct appeal, and where the "state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." 569 U.S. 413, 429 (2013). Under Missouri law, a post-conviction proceeding is the exclusive procedure for pursuing an ineffective assistance of counsel claim. Moore-El v. Luebbers, 446 F.3d 890, 896 (8th Cir. 2006); Mo. S. Ct. Rule 29.15(a).

A petitioner claiming ineffective assistance of postconviction counsel as the cause for his procedural default must demonstrate the following:

> (1) the claim of ineffective assistance of trial counsel was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; and (3) the state collateral review proceeding was the "initial" review proceeding with respect to the "ineffective-assistance-of-trial-counsel claim."

Marcyniuk v. Payne, 39 F.4th 988, 996 (8th Cir. 2022) (quoted case omitted), cert. denied, No. 22-6951, __ S. Ct. __, 2023 WL 3937645 (June 12, 2023).

C.  Grounds Two, Four, and Five are Defaulted and Procedurally Barred

Petitioner asserts three grounds for the first time in his federal habeas petition: a due process claim that the State knowingly used the perjured testimony of a witness (Ground Two); that he was denied compulsory process for obtaining the victim's testimony and relevant records (Ground Four); and that the trial court lacked jurisdiction due to defects in the indictment (Ground Five).[4]

To preserve issues for federal habeas review, a state prisoner must fairly present his claims to state courts during direct appeal or in post-conviction proceedings. Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997). Failure to raise a claim in a post-conviction appeal is an abandonment of a claim. Id. at 1150. Where a prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, such as failing to raise claims on appeal, federal habeas review of the claims is barred.  Coleman, 501 U.S. at 750.

As stated above, a petitioner may overcome the procedural bar if he can demonstrate legally sufficient cause for the default and actual prejudice resulting from it, or that failure to review the

---

[4]Petitioner raised a version of Grounds Four and Five in his pro se post-conviction Rule 29.15 motion. (Resp. Ex. J, ECF No. 8-10 at 32-40.) Petitioner did not present either ground on direct appeal (Resp. Ex. A, ECF No. 8-1 at 1-38), or in his Amended Rule 29.15 motion, however. (Resp. Ex. J, ECF No. 8-10 at 60-67.) Petitioner therefore defaulted these grounds by not presenting them at each step of the proceedings. See Sweet, 125 F.3d 1144, 1149 (8th Cir. 1997).

claim would result in a fundamental miscarriage of justice.  Id.  To satisfy the "cause" requirement, Petitioner must show that an "external" impediment prevented him from presenting his claim to the state court in a procedurally proper manner.  Id. at 753.

Petitioner makes no attempt to establish cause and prejudice to overcome his procedural default. Instead, he asserts a claim labeled as a "Schlup claim of actual innocence" in Ground One. (ECF No. 1 at 4-5.) The Petition offers the following statement as "supporting facts" for Ground One: "evidence of actual innocence, that was not av[a]ilable at Trial, for the Jury to hear. The Victim['] s own words, by Affidavit that was entered as evidence at Sentencing. And gave testimony at P.C.R. hearing." (ECF No. 1 at 4.) Petitioner also asserts that the Constitutional violations he asserts have "resulted in the conviction of one who is actually innocent and that the miscarriage of justice exception is explicitly tied to the Petitioner['s innocence." (Id. at 22.)

Based on these statements, the Court finds Petitioner's Ground One is not a Schlup actual innocence claim, but instead is a freestanding claim of actual innocence. As noted above, the Supreme Court has never held that a prisoner may be entitled to habeas relief based on a freestanding actual innocence claim. McQuiggin v. Perkins, 569 U.S. 383, 392 (2013). The Eighth Circuit observed in a death penalty case that if such a claim were recognized, the threshold for the claim would be "extraordinarily high," requiring:

> more convincing proof than the "gateway" standard that allows for consideration of otherwise defaulted constitutional claims upon a showing of actual innocence. Thus, on a freestanding claim of actual innocence, it is not sufficient that petitioner shows it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt.

Feather v. United States, 18 F.4th 982, 986–87 (8th Cir. 2021) (quoting Dansby v. Hobbs, 766 F.3d 809, 816 (8th Cir. 2014)).

Petitioner asserts in his reply memorandum, however, that he "brings the [procedurally defaulted] grounds under a Schlup claim of actual innocence miscarriage of justice exception to

have his otherwise barred Constitutional claims considered on the merits." (ECF No. 9 at 3.) Therefore, the Court examines Ground One, in the first instance, as a <u>Schlup</u> actual innocence/miscarriage of justice claim.

If proved, actual innocence serves as a gateway through which a procedurally barred claim may proceed to review upon the merits. <u>McQuiggin</u>, 569 U.S. at 386 (citing <u>Schlup</u>, 513 U.S. at 329, and <u>House v. Bell</u>, 547 U.S. 518, 538 (2006)). The Supreme Court has cautioned that "tenable actual-innocence gateway pleas are rare," and "a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." <u>McQuiggin</u>, 569 U.S. at 386 (quoting <u>Schlup</u>, 513 U.S at 329). "[T]he <u>Schlup</u> standard is demanding and permits review only in the '"extraordinary"' case." <u>House</u>, 547 U.S. at 538 (quoting <u>Schlup</u>, 513 U.S. at 327). <u>See</u> <u>also</u> <u>Schlup</u>, 513 U.S. at 324 (emphasizing that "in the vast majority of cases, claims of actual innocence are rarely successful").

To meet the threshold requirement, a petitioner must present a claim that is "credible." <u>Schlup</u>, 513 U.S. at 324-25. To be considered "credible," the claim must be supported by "new reliable evidence . . . that was not presented at trial." <u>Id.</u> at 324. Evidence is only "new" in this context if it was "not available at the time of trial through the exercise of due diligence." <u>Kidd v. Norman</u>, 651 F.3d 947, 953 (8th Cir. 2011). If the petitioner presents new reliable evidence, then "the habeas court must consider all the evidence, old and new, incriminating and exculpatory[.]" <u>House</u>, 547 U.S. at 538 (internal quotation marks omitted). "Based on this total record" the habeas court "must make 'a probabilistic determination about what reasonable, properly instructed jurors would do.'" <u>Id.</u> (quoting <u>Schlup</u>, 315 U.S. at 329). "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." <u>Schlup,</u>, 513 U.S. at

329. "The court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors." House, 547 U.S. at 538.

To avoid a dismissal of his procedurally barred claims under the McQuiggin/Schlup standard, Petitioner must present a credible claim and establish that his evidence regarding the victim's affidavit is "new" and "reliable" under the appropriate standards. If Petitioner can do so, then the Court must examine all of the evidence and "make a probabilistic determination about what reasonable, properly instructed jurors would do." House, 547 U.S. at 538. Petitioner must "persuade[] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Schlup,, 513 U.S. at 329. If he does so, then the Court may examine his procedurally barred claims.

Here, Petitioner presents the affidavit of the victim, his mother, Ruth Sanderson, to support his actual innocence claim. The Sanderson affidavit cannot be deemed new evidence, as it would have been available at trial through the exercise of due diligence. See Kidd, 651 F.3d at 953. The Sanderson affidavit has been in the underlying record since the time of Petitioner's sentencing (Resp. Ex. L, ECF No. 8-12 at 340-41), and Ms. Sanderson testified at the evidentiary hearing on Petitioner's Rule 29.15 motion. (Resp. Ex. K, ECF No. 8-11 at 36-59). The record indicates Ms. Sanderson would have been available to testify at trial, but trial counsel testified at the Rule 29.15 hearing that Petitioner specifically instructed counsel not to call the victim at trial on multiple occasions. (Resp. Ex. K, ECF No. 8-11 at 7-8.) Nonetheless, defense counsel testified that they and their investigator made multiple attempts to contact Ms. Sanderson, including by going to her house two or three times, but no one was home. Defense counsel left business cards at Ms. Sanderson's house, but she never called them back. (Id. at 8) The record also indicates Petitioner had been in telephone contact with

Ms. Sanderson before trial and attempted to dissuade her from testifying. (Resp. Ex. L, ECF No. 8-12 at 341-42, 277-79.)

Even if the Sanderson affidavit could be deemed new evidence, the record shows it is not reliable. There are significant inconsistencies between the affidavit's contents and the recording of the 911 call played at trial on which Ms. Sanderson's voice was heard, and the statement she gave to law enforcement a few days after the crime, which she later confirmed was accurate but also stated she didn't want Petitioner punished. (Resp. Ex. K, ECF No. 8-11 at 8-9.) The post-conviction Rule 29.15 motion court "seriously question[ed] [Ms. Sanderson's] credibility" and concluded "[s]he did not provide a viable credible defense." (Resp. Ex. J, ECF No. 8-10 at 142.) The Missouri Court of Appeals deferred to this credibility finding and noted Sanderson's "questionable testimony before the motion court[.]" (Resp. Ex. I, ECF No. 8-9 at 9.) Even if Ms. Sanderson's post-trial statement was presented to the jury, it could be impeached with the 911 call recording, her verbal and written statements to the police and to her grandson, who made the 911 call and was present during the crime, and evidence that Petitioner instructed Ms. Sanderson not to testify at trial. For these reasons, the Court concludes the Sanderson affidavit is not reliable.

Because the Court determines that Petitioner's evidence is not "new" or reliable, it is unnecessary to conduct a further Schlup analysis. Nooner v. Hobbs, 689 F.3d 921, 937 (8th Cir. 2012). In addition, a reasonable jury could still weigh the evidence presented at trial, including the 911 call recording and Ms. Sanderson's subsequent statement to law enforcement, more heavily than the post-trial Sanderson affidavit.

Based on this evidence, Petitioner cannot carry his burden to establish that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." McQuiggin, 513 U.S. at 386. Nor does Petitioner establish that a miscarriage of justice occurred. Petitioner has failed to meet the standard established in McQuiggin for an equitable exception to

procedural bar of his claims that were not presented in the State courts. As a result, the Court will deny Petitioner's <u>Schlup</u> actual innocence claim in Ground One and will dismiss Grounds Two, Four, and Five as procedurally barred.

Finally, to the extent Petitioner asserts a freestanding actual innocence claim in Ground One, if such a claim were recognized, the threshold for the claim is "extraordinarily high" and requires "more convincing proof than the 'gateway' standard that allows for consideration of otherwise defaulted constitutional claims upon a showing of actual innocence." <u>Dansby</u>, 766 F.3d at 816. Because Petitioner does not meet the "gateway" standard, he cannot meet the higher freestanding actual innocence claim standard.

### Conclusion

For the foregoing reasons, the Court concludes Ground Three of Petitioner Raymond J. Devereux, Jr.'s Petition for Writ of Habeas Corpus fails on the merits, Ground One fails to establish the actual innocence gateway under <u>McQuiggin</u> to overcome procedural bar and also fails as a freestanding actual innocence claim, and Grounds Two, Four, and Five are procedurally barred. As such, all of the grounds will be dismissed and denied.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Raymond J. Devereux, Jr.'s Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (ECF No. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner Devereux has not made a substantial showing of a denial of a constitutional right, and this Court will not issue a Certificate of Appealability.

A separate Judgment in accordance with this Memorandum and Order will be filed herewith.

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this 20th day of June, 2023.